UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TIMOTHY BOUDREAUX                              CIVIL ACTION

VERSUS                                         NO: 14-1820

SCOTT'S BOAT RENTALS, LLC,                     SECTION: "J" (5)
ET AL.

### ORDER AND REASONS

Before the Court are a *Motion for Judgment on the Pleadings* (**Rec. Doc. 64**) filed by Defendant, Scott's Boat Rentals, LLC ("Scott's"), an *Opposition* thereto (**Rec. Doc. 76**) filed by Intervenor, Wood Group USA, Inc. ("Wood Group"), a *Reply* **(Rec. Doc. 89)** filed by Scott's, and a *Sur-Reply* **(Rec. Doc. 95)** filed by Wood Group. Plaintiff, Timothy Boudreaux ("Plaintiff") joined in and adopted the foregoing motion. **(Rec. Doc. 70)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the Motion for Judgment on the Pleadings should be **GRANTED**.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This litigation arises from injuries suffered by Plaintiff, Timothy Boudreaux, while transferring from the M/V TANDI MARIE (the "Vessel") to an offshore production platform via swing rope

1

on August 11, 2013. At the time, Plaintiff worked for Wood Group PSN[1] as an operator. His responsibilities included monitoring gauges and ensuring that the platform ran properly. Black Elk Energy Offshore Operations, L.L.C. ("Black Elk") owned the platform in question and hired Wood Group as an independent contractor to monitor production. Pursuant to the agreement, Black Elk and Wood Group PSN signed a Master Service Agreement ("MSA"). Black Elk also contracted Scott's Boat Rentals, LLC ("Scott's") to transport workers to and from its production platforms. Plaintiff suffered injuries when he fell into the water while attempting the transfer from the Vessel to the platform. Plaintiff claims that "rough seas, inadequate instruction, improper positioning of the boat, [and] placement of equipment on the deck of the [Vessel]" caused him to lose his grip and fall.

Plaintiff filed suit against Scott's on August 11, 2014. Wood Group intervened seeking recovery, subrogation, or right of reimbursement from any damages received by Plaintiff under

---

[1] The parties have not specifically described the relationship between intervenor Wood Group and Plaintiff's employer Wood Group PSN. It is undisputed that the Wood Group PSN was originally known as Wood Group Production Services, Inc., which changed its name on January 25, 2013. (Rec. Doc. 89-4.) Wood Group Production Services is the assignee of Baker/MO Services, Inc., which originally entered into a Master Service Agreement with Black Elk on December 28, 2009. (Rec. Doc. 64-2). Following the assignment, the parties amended the agreement to name Wood Group Production Services as a contractor. (Rec. Doc. 89-1.) For the sake of clarity, the Court will refer to Intervenor as "Wood Group" and Plaintiff's employer as "Wood Group PSN."

2

workers' compensation laws. (Rec. Doc. 19.) Scott's subsequently filed third-party complaints against Wood Group PSN and Black Elk.[2] (Rec. Doc. 29; Rec. Doc. 30.) Scott's voluntarily dismissed its third-party complaint against Wood Group PSN on February 26, 2016. (Rec. Doc. 57.) Scott's filed its Motion for Judgment on the Pleadings on April 4, 2016. (Rec. Doc. 64.) Plaintiff adopted that motion on April 5. (Rec. Doc. 70.) Wood Group opposed the motion on April 12. (Rec. Doc. 76.) The Court granted Scott's leave to file a reply memorandum on April 18. Wood Group sought permission to file a sur-reply, which the Court granted on April 20.

## PARTIES' ARGUMENTS

In its Motion for Judgment on the Pleadings, Scott's argues that Wood Group waived its rights to seek reimbursement for the benefits paid to Plaintiff. Scott's claims that the MSA between Wood Group PSN and Black Elk required Wood Group PSN to purchase insurance, including state workers' compensation insurance and insurance that provides Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") coverage for workers covered by that statute. Scott's contends that the MSA required Wood Group PSN to pay the deductibles for the state workers' compensation and LHWCA

---

[2] The Court later stayed Scott's claim against Black Elk pursuant to Section 362 of the Bankruptcy Code. (Rec. Doc. 46.)

insurance. Further, Scott's argues that the MSA required Wood Group PSN to waive any right to bring a subrogation claim against Black Elk, its contractors, and its invitees. Thus, Scott's claims that Wood Group waived its right to bring a subrogation action against Scott's, which was a contractor of Black Elk. Moreover, Scott's argues that Louisiana law provides that such waivers are enforceable and not invalidated by the Louisiana Oilfield Anti-Indemnity Act ("LOAIA").

In its opposition, Wood Group claims that the Motion for Judgment on the Pleadings lacks factual support. First, Wood Group argues that Scott's has not proved the existence of its contract with Black Elk or that it is entitled to enforce the provisions of the MSA between Black Elk and Wood Group PSN. Wood Group also argues that Scott's has not produced evidence to show that Wood Group PSN was Plaintiff's employer. Second, Wood Group asserts that the motion fails on the merits because genuine issues of material fact exist. Wood Group argues that the waiver of subrogation may not be valid and may not extend to the benefit of Scott's, which was not a party to the MSA. Further, Wood Group claims that the LOAIA is applicable because Scott's seeks to enforce the indemnity provisions of the MSA against Wood Group. Finally, Wood Group argues that the LOAIA does not void

4

indemnification provisions in oilfield agreements for losses caused by the fault of the indemnitee when the indemnitee pays for its own insurance coverage. However, the exception does not apply when an independent contractor bears a material part of the cost of insurance. Wood Group argues that the exception applies here because the indemnitee, Black Elk, did not pay the premium for Wood Group PSN's policy, meaning Scott's lacks the protections of the indemnity and insurance provisions of the MSA.

Scott's filed a reply memorandum in support of its motion, attaching documentation to prove that Wood Group PSN was Plaintiff's employer and that Scott's was a contractor of Black Elk. Scott's explains the history of Wood Group PSN, formerly known as Wood Group Production Services. Scott's argues that Wood Group has not shown that is the same entity as Wood Group PSN, that it was Plaintiff's employer, or that it paid workers' compensation benefits to Plaintiff. Scott's argues that it was indisputably a contractor for Black Elk, making it a member of the "Black Elk Group" pursuant to the MSA. Further, Scott's argues that Wood Group PSN's waiver of subrogation is valid because it is not seeking to enforce the indemnity provision of the MSA. Scott's originally filed a third-party claim against Wood Group PSN seeking indemnification, but it voluntarily dismissed its claim. Scott's

acknowledges that it does not have a valid claim for indemnification because Black Elk failed to pay the insurance premiums it was obligated to pay under the MSA. Thus, Scott's claims that the waiver of subrogation is valid and enforceable.

Wood Group filed a sur-reply in response to Scott's reply. First, Wood Group argues that the MSA does not grant a waiver of subrogation in favor of Scott's. Wood Group contends that the waiver of subrogation clause requires a waiver in favor of Black Elk Group "to the extent of the liabilities and indemnity obligations" included in the insurance policies. Thus, Wood Group claims that the waiver of subrogation clause is meant to be a piece of the indemnity provisions. Wood Group claims that, because the two sections are intended to work together, enforcing the waiver of subrogation clause will violate the LOAIA. Second, Wood Group argues that Scott's seeks to enforce the indemnity clause in its third-party claim against Black Elk. Further, Wood Group contends that genuine issues of material fact exist because Scott's originally sought indemnity from Wood Group PSN but later dismissed its claim. Thus, Wood Group argues that Scott's motion should be denied.

**LEGAL STANDARD**

Rule 12(c) states, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). In this case, Scott's relies on "matters outside pleadings" to support its Motion for Judgment on the Pleadings. Accordingly, the Court will treat the motion as a motion for summary judgment.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party,

7

but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a

8

genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Wood Group's complaint in intervention seeks "recovery and/or subrogation and/or right of reimbursement from any damages of settlement sought or received by the Plaintiff against [Scott's] under the prevailing workers' compensation laws." (Rec. Doc. 19.) Scott's claims that Wood Group waived its right to subrogation. The MSA between Black Elk and Wood Group PSN necessitated that Wood Group PSN purchase workers' compensation and LHWCA insurance. (Rec. Doc. 64-2, at 15.) Further, the MSA stated:

> All insurance policies of CONTRACTOR [Wood Group PSN], whether required by this Agreement or not, shall name BLACK ELK GROUP as an additional insured and shall be primary to the extent of the liabilities and indemnity obligations assumed by CONTRACTOR under this Agreement. Additionally, all insurance policies of CONTRACTOR, whether specifically required by this Agreement or not, shall be endorsed to waive subrogation against BLACK ELK GROUP to the extent of the liabilities and indemnity obligations assumed by CONTRACTOR under this Agreement.

*Id.* at 14. The contract defined "Black Elk Group" as "Black Elk, its parent, subsidiaries, affiliated companies, joint venturers, partners, and its and their respective officers, directors, employees, agents, invitees and Black Elk's other contractors."

9

*Id.* at 7. The undisputed evidence shows that Scott's orally contracted with Black Elk to provide the Vessel for Black Elk to use to transport workers and materials. (Rec. Doc. 89-6; Rec. Doc. 89-7.) Thus, Scott's was a contractor for Black Elk and a member of the Black Elk Group.

Pursuant to the MSA, Wood Group PSN waived the right of subrogation with respect to workers' compensation payments as to Scott's and Black Elk. Furthermore, Wood Group's insurer, ACE American Insurance Company, agreed to waive its right of subrogation against "any person or organization against whom you [Wood Group] have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss." (Rec. Doc. 89-8, at 2.) Therefore, Wood Group's intervention must be dismissed unless it can create a genuine issue of material fact as to the validity of the waiver of subrogation.

Louisiana law generally allows waivers of subrogation. *Hudson v. Forest Oil,* 2003 WL 21276385, at *4 (E.D. La. June 2, 2003), *aff'd* 372 F.3d 742 (5th Cir. 2004). However, the LOAIA invalidates some waivers of subrogation. The LOAIA applies to agreements that (1) pertain to an oil, gas, or water well and (2) are "related to exploration, development, production, or transportation of oil, gas, or water." *Fontenot v. Chevron U.S.A. Inc.,* 676 So. 2d 557,

10

564 (La. 1996). An insurance contract that is ancillary to an agreement such as the master contract satisfies this test. *Id.* Neither side disputes that the MSA satisfies this two-part test. With respect to waivers of subrogation, the LOAIA provides:

> (B) Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
>
> . . . (G) Any provision in any agreement . . . which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

La. Rev. Stat. § 9:2780. Based on these provisions, the Louisiana Supreme Court has held that waivers of subrogation are valid unless they run afoul of the LOAIA. *Fontenot,* 676 So. 2d at 565. "[V]oiding a waiver of subrogation clause only achieves the purpose of [the LOAIA] when such clause is sought to be enforced in conjunction with the enforcement of an indemnification clause." *Id.*

11

In the case at bar, the waiver of subrogation clause does not appear to frustrate the LOAIA's purposes. Scott's is not seeking to enforce an indemnity clause against Wood Group. After Wood Group intervened in the case, Scott's filed a third-party complaint seeking indemnification against Wood Group PSN. (Rec. Doc. 29.) However, Scott's voluntarily dismissed the claim on February 26, 2016. (Rec. Doc. 57.) Therefore, the LOAIA is inapplicable to the instant case. Since Louisiana law and federal maritime law generally uphold indemnification and waiver of subrogation clauses, the waiver of subrogation clause at issue in the instant matter must be upheld absent any other grounds for invalidation.

Wood Group unsuccessfully attempts to create other genuine issues of material fact. However, Scott's produced undisputed evidence in its reply memorandum to show that Wood Group PSN employed Plaintiff and that the MSA extended to Scott's as a contractor of Black Elk. Wood Group raises the issue of the validity of the waiver of subrogation clause but fails to introduce any evidence showing that the clause is invalid. Wood Group also raises the issue of the validity of the indemnification provisions of the MSA. However, Scott's agrees that the indemnification provisions are invalid because Black Elk failed to pay insurance premiums. This failure is the subject of Scott's third-party

complaint against Black Elk. (Rec. Doc. 30, at 5.) Further, in its claim against Black Elk, Scott's acknowledges that it does not have a legal right to defense and indemnity from Wood Group. *Id.*

Wood Group argues that Scott's is attempting to enforce the indemnity clause against Black Elk. In its third-party claim against Black Elk, Scott's seeks damages in the form of the indemnity Wood Group would owe if the indemnity clause were valid. However, Scott's is not seeking to enforce the indemnity clause against Wood Group. Scott's plea for indemnity from Black Elk does not violate the policy underlying the LOAIA. In *Fontenot*, the Louisiana Supreme Court described the LOAIA's policy as such:

> Subsection G of the Act is aimed toward preventing the use of insurance contracts to circumvent the Act. . . . In the past, oilfield service companies were required to have their insurers waive their subrogation rights against the oil companies. This waiver of subrogation, acting in conjunction with the indemnity provisions of standard drilling contracts, resulted not only in the loss of compensation payments made by the service company's insurer, but also in the service company picking up the tab for both the cost of defense and the amount of damage obtained from the oil company. Instead of being liable for either tort damages or workers compensation, the service company was liable for both. . . .
>
> The indemnification clause and the waiver of subrogation clause, when used together, fit hand in glove. They offer two distinct advantages to an oil company contracting with an oilfield service contractor. The indemnification clause allows the oil company to shift liability to the oilfield service contractor. The waiver of subrogation supplements this shifting of liability by

13

>   assuring that the oil company will not be exposed to an
>   action for reimbursement of compensation payments. When
>   the waiver of subrogation clause is used alone, there is
>   no shifting of liability to "supplement". And by itself,
>   a waiver of subrogation clause does not shift the oil
>   company's liability. This shift of liability only occurs
>   when the two clauses are used together. Thus, voiding a
>   waiver of subrogation clause only achieves the purpose
>   of the Anti-Indemnity Act when such a clause is sought
>   to be enforced in conjunction with the enforcement of an
>   indemnification clause.

*Fontenot*, 676 So. 2d at 564-65 (internal citations omitted).

In the case at bar, Black Elk is not entitled to shift liability to Wood Group because the indemnity clause in the MSA is invalid. Similarly, Scott's cannot claim indemnity from Wood Group. All it can do is enforce the waiver of subrogation clause to assure that it will not be subject to an action for reimbursement of workers' compensation benefits paid to Plaintiff. As explained by the Louisiana Supreme Court, the waiver of subrogation clause does not shift liability unless it is used in conjunction with the indemnity clause. The fact that Scott's seeks contractual damages in the form of indemnity from Black Elk does not change this analysis. If Scott's prevails in its claim against Black Elk, Wood Group will not be required to indemnify Scott's. Black Elk will be required to pay the indemnity Scott's would otherwise be entitled to had Black Elk not breached the contract. Wood Group failed to create any genuine issues of material fact as to the waiver of

subrogation. Thus, Scott's is entitled to summary judgment on Wood Group's complaint in intervention.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Scott's *Motion for Judgment on the Pleadings* **(Rec. Doc. 64)** is **GRANTED.**

New Orleans, Louisiana, this 22nd day of April, 2016

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT